# United States Court of Appeals
## For the First Circuit

No. 02-2395

LAHOUARI HAOUD,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF THE FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Circuit Judge,
Campbell, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Daniel F. Cashman, with whom Cashman & Lovely, P.C., and
Susanna L. Shafer, were on brief for Petitioner.
Beth J. Werlin, with whom Mary A. Kenney, Nadine K.
Wettstein, were on brief for American Immigration Law Foundation,
Iris Gomez, was on brief for Massachusetts Law Reform Institute,
and Harvey Kaplan, with whom Kaplan, O'Sullivan & Friedman, were
on brief for American Immigration Lawyers Association, New
England Chapter, amicus curiae.
Virginia M. Lum, Attorney, with whom Peter D. Keisler,
Assistant Attorney General, and Terri J. Scadron, Assistant
Director, were on brief for Respondent.

November 25, 2003

**STAHL, <u>Senior Circuit Judge</u>**.  Appellant Lahouari Haoud appeals from the Board of Immigration Appeals' (the "Board") affirmance without opinion of an Immigration Judge's order denying Haoud's claims for relief from removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 <u>et</u> <u>seq</u>.  As the Board's decision provides an inadequate basis for judicial review, we remand to the Board for further proceedings.

## I. BACKGROUND

Haoud is a native and citizen of Algeria.  He entered the United States on a six-month visa in 1995 and stayed unlawfully after the expiration of the visa.  On December 30, 1999, the FBI and local police came to his home in East Boston, Massachusetts, and arrested him for carrying a fraudulent green card.  Law enforcement also questioned him about terrorist activities.  Although a criminal charge was never filed against Haoud, numerous newspaper articles and television broadcasts linked him to the general terrorist scare on the eve of the new millennium, specifically with regard to Algerians arrested in Boston who had been questioned about their connections with terrorist groups such as the Armed Islamic Group of Algeria ("GIA").

Because of the fraudulent green card and the fact that he had overstayed his visa, Haoud was held at an INS detention center throughout January 2000.  On March 24, 2000, he submitted an application and supporting affidavit for asylum, withholding of

removal under 8 U.S.C. § 1231(b)(3), withholding or deferral of removal under Article 3 of the United Nations Convention Against Torture, and voluntary departure under 8 U.S.C. § 1229a. He claimed that because his arrest for possessing a false green card had generated local and nationwide publicity implying that he was associated with an Algerian terrorist group, he feared persecution if he was returned to Algeria. At his asylum hearing, in addition to his own testimony, documentation of his arrest and the subsequent media coverage, Haoud produced Dr. John Entelis, an expert in Algerian politics from Fordham University, who testified that because of the paranoid climate pervading Algerian society and its government, Haoud would be in danger in Algeria as the government, knowing of the claims made against him in the United States, would consider him a terrorist or enemy of the state.

The Immigration Judge ("IJ") denied all four of Haoud's applications. He decided that Haoud's asylum application was untimely filed and that he failed to establish changed circumstances to excuse that untimeliness. See 8 U.S.C. §§ 1158(a)(2)(B) & (D). Alternatively, the IJ found that Haoud's application failed to demonstrate either past persecution or a well-founded fear of future persecution based on a reasonable possibility that he would suffer harm in Algeria. The IJ explained that Haoud could not use the media reports to "manufacture an

asylum claim" and that Dr. Entelis's testimony was too speculative to support the claim.

Shortly after the IJ made these determinations, the Board decided a case, In re Amine Touarsi, A78 161 736 (BIA 12/28/2000), involving another Algerian man who was arrested in Boston the same night as Haoud on the same suspicion of terrorism. Although the IJ denied Touarsi's asylum application, the Board on appeal reversed upon concluding that Touarsi had "a well-founded fear of persecution in Algeria based on imputed political opinion."

Haoud timely appealed the IJ's decision to the Board. In his appeal, Haoud raised Touarsi. Notwithstanding that apparent precedent, the Board affirmed the IJ's decision without opinion under 9 C.F.R. § 1003.1(e)(4).

## II. DISCUSSION

On appeal, the parties raise three primary issues: (1) whether we have jurisdiction to review the Board's decision; (2) whether the IJ's decision was in error; and (3) whether the Board's affirmance without opinion (AWO) violated the Board's own regulatory procedure. Because we decide this appeal on issue (3), we discuss issues (1) and (2) only as they bear on (3).

For a determination by the Board of Immigration Appeals of statutory eligibility for relief from deportation, we review questions of law de novo. See Civil v. INS, 140 F.3d 52, 54 (1st Cir. 1998). While deference is given to an agency's interpretation

of the underlying statute, such interpretation must be "in accordance with administrative law principles." Debab v. INS, 163 F.3d 21, 24 (1st Cir. 1998).

**A. Jurisdiction**

The government contends that we lack jurisdiction to review the IJ's denial of Haoud's asylum application because Haoud failed to file his application within one year of his arrival in the United States.[1]  The government also argues that under 8 U.S.C. § 1158(a)(3), we are foreclosed from reviewing a determination that an alien failed to timely file an asylum application.[2]  Haoud concedes that his asylum application was untimely, but argues that he presented "extraordinary circumstances" that excuse the delay, pursuant to 8 U.S.C. § 1158(a)(2)(D).[3]

---

[1] 8 U.S.C. § 1158(a)(2)(B) provides

Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

[2] 8 U.S.C.  § 1158(a)(3) provides

No Court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

[3] 8 U.S.C. § 1158(a)(2)(D) provides

An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

Our sister circuits agree that 8 U.S.C. § 1158(a)(3) bars judicial review of the Board's decision as to the timeliness of an asylum application.[4]  See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003); Tsevegmid v. Ashcroft, 318 F.3d 1226, 1230 (10th Cir. 2003); Fahim v. U.S. Attorney General, 278 F.3d 1216, 1217 (11th Cir. 2002); Hakeem v. INS, 273 F.3d 812, 815 (9th Cir. 2001). The Tenth Circuit in Tsevegmid explained:

> This court generally has jurisdiction to review the denial of any asylum request.  See 8 U.S.C. § 1252(a)(2)(B)(ii). . . .  However, our jurisdiction to review a [Board] determination on the timeliness of an application for asylum is limited by statute.  Section 1158(a)(3) expressly provides that the courts do not have "jurisdiction to review any determination" on whether the alien filed his application within a year of entry or whether "changed circumstances" exist "which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application."

318 F.3d at 1229.

Though we concur that 8 U.S.C. § 1158(a)(3) could bar our review of the IJ's determination of the timeliness of Haoud's asylum application, resolution of this issue does not dispose of this case.  As discussed infra, we must determine on what grounds, whether it be untimeliness or the merits of Haoud's asylum claim, the Board affirmed the IJ's decision.  If the Board affirmed the

_____

[4]We are not similarly barred from reviewing the IJ's denial of Haoud's applications for withholding of removal, Convention Against Torture protection, and voluntary departure.  In his brief, however, Haoud has not asked us to do so, and we therefore refrain from discussing these issues.

IJ's decision on the merits of Haoud's persecution claims, but rejected the IJ's conclusion as to the untimeliness and "changed circumstances" issue, then we have jurisdiction over this appeal.

**B. The IJ's Decision**

Haoud challenges the IJ's decision on the merits, arguing that the IJ made erroneous conclusions of law that were neither harmless nor immaterial, and hence led to an incorrect result in denying him asylum. Here the Board's decision effectively prevents a reviewing court from knowing whether the affirmance of the IJ's decision is reviewable or non-reviewable. The AWO cannot be used to deny our legitimate review power if we are left without a proper basis to determine our own jurisdiction or to evaluate the Board's own critical analysis, see infra. Accordingly, we refrain at this time from discussing the merits of the IJ's decision.

**C. The Board's Affirmance Without Opinion**

The Board "has the duty to follow its own federal regulations." Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000); see also Saakian v. INS, 252 F.3d 21, 25-27 (1st Cir. 2001). Failure to do so can result in the reversal of an agency order and a new hearing. Id.

Haoud argues that the Board failed to follow its own regulatory procedure when it issued the affirmance without opinion (AWO) in this case. The Attorney General adopted the AWO procedure at issue in 1999. Rather than the usual three-member review, an

AWO allows for review of a case by a single member, who then affirms the IJ's decision with the statement, "The Board affirms, without opinion, the result of the decision below." 8 C.F.R. § 1003.1(a)(7)(iii). Unlike decisions rendered after review by a three-member panel, a single Board member acting under 8 C.F.R. § 1003.1(e)(4) is prohibited from explaining his decision on the merits in an AWO. Moreover, the regulation defines an AWO as a Board approval of only the "result reached in the decision below." 8 C.F.R. § 1003.1(e)(4). The AWO does not "necessarily imply approval of all the reasoning" of the IJ's decision, although it does signify the Board's conclusion that any errors were harmless or immaterial. Id. The Board member can issue an AWO only if he determines:

> that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel fact situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

Id.

The government strenuously argues that the Board's decision to streamline a particular case is committed to agency discretion and is not subject to judicial review. See 5 U.S.C. § 701(a)(2); Heckler v. Chaney, 470 U.S. 821, 830 (1985). Where a law "is drawn so that a court would have no meaningful standard

-8-

against which to judge the agency's exercise of discretion," Congress is assumed to have "'committed' the decision making to the agency's judgment absolutely." Heckler, 470 U.S. at 830-32.

Heckler involved a decision by the federal Food and Drug Administration to refrain from instituting enforcement proceedings with respect to drugs used for lethal injections to carry out the death penalty. The Supreme Court found the FDA's decision unreviewable because it dealt with "complicated balancing of factors" that were "peculiarly within [the agency's] expertise." Id. at 831. The Court found no applicable legal standard or "law" in the Federal Food Drug and Cosmetic Act against which a court could legitimately review the FDA's decision not to commence enforcement proceedings. See id.

Here, the Board's own regulation provides more than enough "law" by which a court could review the Board's decision to streamline. As 8 C.F.R. § 1003.1(e)(4) sets out supra, the Board cannot affirm an IJ's decision without opinion if the decision is incorrect, errors in the decision are not harmless or immaterial, the issues on appeal are not squarely controlled by Board or federal court precedent and involve the application of precedent to a novel fact situation, or the issues raised on appeal are so substantial that a full written opinion is necessary. Especially when the Board's review of an IJ's decision often hinges on Circuit court precedent, we are well-equipped, both statutorily and

practically, to review a decision to streamline. See Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998), cert. denied, 526 U.S. 1004 (1999) (upholding judiciary's role in determining whether an agency's interpretation of a statute is permissible).

The government also postulates that the criteria of 8 C.F.R. § 1003.1(e)(4) were met here and that there was no harmful error requiring review by a three-member panel of the Board. Without an explanation of the reasons for the decision, we cannot determine whether the Board--applying the proper standards under 8 C.F.R. § 1003.1(e)(4)--adequately and correctly evaluated each of the criteria. Here, we do not know which of the alternatives outlined in the regulation was applied to affirm the IJ's decision, which itself was based on multiple grounds. Put another way, presently, we have no way of knowing whether and how the Board applied the standards of 8 C.F.R. § 1003.1(e)(4) to either or both of the IJ's conclusions on (1) the "changed circumstances" exception to the time bar and (2) the issues of past and future persecution that constitute the merits of Haoud's asylum application. The AWO in this case gives us no guidance as to whether the Board affirmed the IJ's decision on a non-reviewable basis, i.e. untimeliness, or a reviewable basis, i.e. the merits of Haoud's asylum claim.

Moreover, there is no way we can determine from the AWO whether the Board reviewed the case and found a legitimate way of

distinguishing the Touarsi case in denying Haoud's asylum claim. We have stated that "[w]hen the [Board] does not render its own opinion, . . ., and either defers [to] or adopts the opinion of the IJ, a Court of Appeals must then review the decision of the IJ." Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003), quoting Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002); Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003). This approach is inapposite here because the IJ never had the opportunity to consider Touarsi, which was rendered following the IJ's decision. There, the Board granted another Algerian national asylum on very similar facts and only four months after the IJ's denial of Haoud's application. Like Haoud, Touarsi had been arrested on December 30, 1999, by federal authorities in a nationwide investigation of a suspected terrorist plot against targets in the United States by the GIA. News of the investigation, including Touarsi's name, had been widely reported in the local and national press. In re Amine Touarsi, A78 161 736 at 1-2. The Board held that Touarsi "had a well-founded fear of persecution in Algeria on account of the political opinion that would be imputed to him by that country's government, in that he would be viewed and treated as an individual who sympathized with or supported the GIA or another Islamist terrorist group." Id. at 4.

Notwithstanding the fact that Haoud brought Touarsi to its attention, the Board failed to render a decision consistent

-11-

with or fully explained as reasonably departing from its own precedent in Touarsi. As the regulation clearly sets out, "Except as they may be modified or overruled by the Board or the Attorney General, decisions of the Board shall be binding on all officers and employees of the Service or Immigration Judges in the administration of the Act." 8 C.F.R. § 1003.1(g). Among the points raised by Haoud with regard to the precedential value of Touarsi, besides the obvious factual similarities, are (1) the Board's conclusion in Touarsi that asylum could be granted based on incidents that occurred solely in the United States, a proposition rejected by the IJ in Haoud's case; and (2) factual findings made by the Board in Touarsi that mirror the rejected testimony of Dr. Entelis.

The Board's use of the AWO procedure in this case runs counter to what we have warned against in the past:

> [A]dministrative agencies must apply the same basic rules to all similarly situated supplicants. An agency cannot merely flit serendipitously from case to case, like a bee buzzing from flower to flower, making up the rules as it goes along.

Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996). Especially where the IJ did not have the opportunity to address Touarsi, the Board has an obligation to do so and thereby "give careful, individualized, rational explanations for its decisions," Mousa v. INS, 223 F.3d 425, 430 (7th Cir. 2000) and "announce its decision in terms sufficient to enable a court to determine it heard and thought and

-12-

not merely reacted."  See Scorteanu v. INS, 339 F.3d 407, 412 (6th Cir. 2003) (citations omitted).

Based on the AWO, we cannot determine whether the Board reviewed Haoud's case and found a legitimate means of distinguishing it from Touarsi.  As we held in Albathani v. INS, "If the [Board] identifies an alternative satisfactory ground for upholding the denial of asylum in a case with an otherwise unsatisfactory decision by the IJ, it must state it or risk remand."  318 F.3d at 378.  The Board's use of the AWO must not interfere with Haoud's "right to a reasoned administrative decision."  See Executive Office of Immigration Review; Board of Immigration Appeals: Streamlining, 64 FR 56135, 56137 (1999).  As Touarsi bears strongly on Haoud's asylum application, an AWO affirming an IJ's decision that never considered Touarsi fails to meet this mandate.

We therefore remand to the Board for further agency proceedings consistent with this opinion.