**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

---

No. 03-1689

ELKIN EDISSON MURIEL VELASQUEZ; OLGA LUCIA VALENCIA QUINCENO;
JULIAN E. MURIEL VALENCIA; MELISA MURIEL VALENCIA, and
VANESSA MURIEL VALENCIA,

Petitioners,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

---

ON PETITION FOR REVIEW FROM AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, Chief Judge,

Campbell, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Walter J. Gleason on brief for petitioner.
Anthony C. Payne, Attorney, Office of Immigration Litigation,
Civil Division, United States Justice Department, Peter D. Keisler,
Assistant Attorney General, Civil Division, and David V. Bernal,
Assistant Director, on brief for respondent.

---

August 10, 2004

---

**CAMPBELL**, <u>Senior Circuit Judge</u>.  This is petition for review of an order of the Board of Immigration Appeals ("Board"), brought by members of the same family, seeking to overturn orders for their removal from the United States to their home country of Colombia.  We affirm the order of the Board.

As the Immigration and Naturalization Service ("INS") has determined, the "lead file" is that of Elkin Edisson Muriel Velasquez; the other appellants are all members of his family, and their claims for asylum, withholding of removal, and protection under the Convention Against Torture, rise or fall on the merits of Velasquez's like claims.  We accordingly focus on the facts and merits of Velasquez's case, these being determinative of the others' as well.

Velasquez was most recently admitted to the United States on July 9, 1996 on a nonimmigrant business visa.  His visa expired, but he nonetheless remained in this country.  On December 22, 1999, the INS commenced removal proceedings against him by issuing a Notice to Appear charging Velasquez with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien who remained in the United States for a time longer than permitted.  On August 18, 1999, James C. Dragon, an attorney, prepared and filed with the INS an application on behalf of Velasquez for asylum, withholding of removal, and protection under the Convention Against Torture.  Represented by Dragon, Velasquez appeared on March 7, 2000 before

an Immigration Judge ("IJ"), conceded removability, and entered his asylum application and supporting documents. On May 4, 2000, at a hearing before an IJ, Velasquez testified to the following effect.

Velasquez owned a store in Itagui, Colombia between 1994 and December of 1996. During that time, he visited the United States on numerous occasions on visitor's visas. In December of 1995, members of an organization known as Populares Milicias physically assaulted him and requested that he pay to them a "war tax" so that he could receive protection from theft or further violence. He paid the war tax several times, the payments totaling 8 million pesos. At one point, he was unable to pay the war tax, and he thereafter suffered another physical assault and a store robbery. He reported the incidents to the police, who installed an internal alarm to curb further robberies. After its installation, Velasquez suffered no further physical assaults or robberies. Nevertheless, he feared the Populares Milicias and decided in April of 1996 that he wanted to stay in the United States indefinitely until conditions improved in Colombia. He returned to the United States in July of 1996 and remained beyond the amount of time permitted in his visa. In "the middle of 1998" friends and family members called Velasquez stating that people, presumably members of Populares Milicias, were asking about his whereabouts. By December of 1998, he had given up hope of ever returning safely to Colombia, so he decided to seek information regarding his ability to stay

legally in the United States.  At that time, upon the advice of a friend, he met "Mr. Ansara," whom he believed could help him with his immigration case.  While Velasquez referred to Ansara as a lawyer, he conceded that Ansara never told him he was a lawyer.  After this initial meeting, Velasquez was able to meet with Ansara only one more time before Ansara disappeared.  Four months after discovering Ansara's disappearance, Velasquez retained Dragon as his attorney.

Based on this testimony, Dragon argued to the IJ that Velasquez's asylum application was not subject to the one-year filing deadline set forth in 8 U.S.C. § 1158(a)(2)(B)[1] because of changed and extraordinary circumstances.  8 U.S.C. § 1158(a)(2)(D) (providing exceptions to one-year filing deadline when petitioner has established "changed circumstances" or "extraordinary circumstances").  In particular, Velasquez argued that since he began to realize only in the summer of 1998 (when he learned that members of Populares Milicias were still looking for him) that the country conditions in Colombia had changed such that his problems there were not going to abate, it was impossible for him to have filed an application for asylum by the one-year deadline, which

---

[1]Section 1158(a)(1) states, "[a]ny alien who is physically present in the United States or who arrives in the United States. . . may apply for asylum . . . ."  Section 1158(a)(2)(B) states, however, that "paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States."

expired on April 1, 1998.[2] He further argued that these constituted extraordinary circumstances, or events beyond Velasquez's control, that made it impossible for Velasquez to meet the filing deadline. He noted that Velasquez filed his asylum application in July of 1999, which he said was shortly after these developments came to light.

At the end of the hearing, on May 4, 2000, the IJ issued her oral decision. She concluded that Velasquez had established no basis for her to apply the changed or extraordinary circumstances exceptions to the one-year deadline for asylum applications. Accordingly, she pretermitted Velasquez's asylum application pursuant to 8 U.S.C. § 1158(a)(2)(B). The IJ, nevertheless, went on "in the alternative" to consider the merits of the asylum claim, together with the withholding of removal and Convention Against Torture claims, which did not have specific filing deadlines. The IJ commented that, "[m]uch of the evidence, essentially, is the same for all three forms of relief . . . . [Velasquez] stated that he had no additional evidence on the issue of withholding or relief under Article 3 of the Convention Against Torture."

---

[2]The basis for the IJ's conclusion that the one-year deadline expired on April 1, 1998 does not appear in the record, nor is it explained in the briefs. Possibly the arrival dates of other family members are relevant. The parties, including the government, do not dispute that the deadline expired on that date, hence we accept it as controlling.

The IJ rejected Velasquez's contention that he was persecuted for his membership in a particular social group or for his political opinion, requirements set out in the INS's relevant regulation, 8 C.F.R. § 208.13(a). Threats and injuries at the hands of the Populares Milicias were not, in her view, shown to have been on account of his political opinion. Nor did she find that Velasquez had shown he belonged to a particular "social group" -- at most, he was a member of the merchant class, which was not enough.

Most importantly, the IJ questioned the consistency of Velasquez's testimony. She wondered whether he truly feared Populares Milicias in light of his willingness to repeatedly return to Colombia even after he was forced to pay the war tax. In any event, having been both assaulted and threatened as early as in 1995, he was well aware of that group's threat several years prior to the expiration of the time for his seeking asylum. She further stated:

> As to [Velasquez's] credibility, I find that he may be telling the truth about these various assaults; he does have some police reports in corroboration. The respondent, however, I believe is not credible when he makes wild speculations such as the people, in fact, who had extorted from him. There's no foundation for that . . . In general, I do not find the respondent to be particularly credible.

In the IJ's opinion, Velasquez and his family relocated to the United States, not out of fear, but because it provided better "prospects."

The IJ concluded that Velasquez was not eligible for asylum, withholding of removal, or relief under the Convention Against Torture. She denied Velasquez's application and ordered his removal to Colombia. Velasquez timely appealed to the Board. On November 19, 2002, the Board affirmed the IJ's order without opinion. Velasquez did not petition this Court for review of the Board's affirmance. 8 U.S.C. § 1252(b)(1). However, on December 17, 2002, Velasquez timely filed with the Board a motion styled as one to reopen.[3] Velasquez argued that his discovery from a November 25, 2002 letter that attorney Dragon had been disbarred on August 23, 2002[4] constituted a "new fact" under 8 C.F.R. §

_____

[3]While the motion was styled as a "Motion to Reopen," it appears also to have been a motion for reconsideration as, in addition to having raised new facts that would allegedly merit reopening, it contained arguments that the Board erred as a matter of fact or law. 8 C.F.R. § 1003.2(c) ("A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."); Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003) ("The purpose of a motion to reconsider is not to raise new facts, but to demonstrate that the [Board] erred as a matter of law or fact."). The Board, itself, interpreted the motion as a motion to "reopen and reconsider." In keeping with the Board's reading of Velasquez's motion, we shall treat it as if it were two motions -- a motion to reopen and a motion to reconsider.

[4]It does not appear, and Velasquez does not contend, that Dragon acted as Velasquez's attorney after having been disbarred. Dragon was disbarred on August 23, 2002 -- between the filing of

103.4(a)(2) meriting reopening. He further argued that the IJ erred as a matter of law in denying the asylum and related applications. On April 17, 2003, the Board denied the motion, and Velasquez timely petitioned for review by this Court. 8 U.S.C. § 1252(b).

## I.        Motion to Reopen

We first review the Board's denial of Velasquez's motion to reopen.

> A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

---

Velasquez's initial appeal from the IJ's order to the Board in June of 2000 and the issuance of the Board's affirmance of that order on November 19, 2002. On November 25, 2002, less than a week after the Board's ruling, Velasquez received the letter informing him of Dragon's disbarment. Velasquez immediately retained Walter Gleason as his new attorney. Gleason then filed the motion to reopen and reconsider addressed to the Board.

Velasquez does not argue that Dragon is to blame for his failure to file a petition for review of the Board's November 19, 2002 order. Indeed, it appears that he had retained Gleason prior to the expiration date to file such a petition. 8 U.S.C. § 1252(b)(1)(generally allowing 30 days after date of order of removal for filing of petition for review of order).

-8-

8 C.F.R. § 1003.2(c), formerly codified in 8 C.F.R. § 3.2(c); see also Zhang, 348 F.3d at 292 (stating, "Courts recognize two independent, but non-exclusive grounds on which the [Board] may deny a motion to reopen: (1) failure to establish a prima facie case, and (2) failure to introduce previously unavailable, material evidence.") (citing Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003)). Subject to these and other limitations, a motion to reopen may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation. 8 C.F.R. § 1003.2(c).

The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, and the Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief. 8 C.F.R. § 1003.2(a), formerly codified in 8 C.F.R. § 3.2(a). Accordingly, we only overturn the Board's ruling for an abuse of discretion. Zhang, 348 F.3d at 292.

Under the abuse of discretion standard, the Board's legal conclusions are reviewed de novo, according due weight to the Board's expertise in construing the statutory framework that it administers.[5] Radkov v. Ashcroft, No. 02-2666, 2004 U.S. App.

---

[5]Velasquez argues we should not defer to the Board's statutory interpretation and, instead, should hold the Board to "the fiduciary standard of responsibility to immigrants -- the highest duty recognized under law." As Velasquez cites no authority for

-9-

LEXIS 14314, *5 (July 14, 2004).  "In the immigration context, as elsewhere, an error of law on the trier's part comprises an abuse of discretion."  Id.

Here, Velasquez argues the case should be reopened because he later discovered he had received ineffective assistance of counsel denying him his rights under both the Sixth Amendment and the Due Process Clause.  The Board rejected this argument, finding that Velasquez had received a full and fair hearing before an IJ, in which he was given the opportunity to apply for any relief for which he was eligible, and because it could find in the record no violations of his rights to due process and no prejudice caused by the representation afforded by his counsel.  The Board did not abuse its discretion.

We address only Velasquez's due process claim; as "[t]here is no Sixth Amendment right to counsel in deportation, which is a civil proceeding, but several courts of appeals (including this one) have said that where counsel does appear for the respondent, incompetence in some situations may make the proceeding fundamentally unfair and give rise to a Fifth Amendment due process objection."  Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001) (citing Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988)).  A proceeding is fundamentally unfair when the alien is prevented

this proposition, we decline to adopt that standard here.

-10-

from reasonably presenting his or her case. Id.

At the time Dragon represented him, Dragon was still a member of the bar, qualified to act as an attorney. There is no evidence in the record relative to the reasons for disbarment or otherwise that could indicate Dragon's peculiar incompetence to act in Velasquez's case while still licensed (the disbarment was for misconduct elsewhere).

Velasquez provided no specifics to the Board reflecting incompetence by counsel that interfered with the reasonable presentation of his case. He noted "problems" with Dragon that he said compounded a prior bad experience with non-attorney Ansara. Velasquez accused Dragon of distraction (seemingly ascribed to Dragon's own disbarment proceedings, then in progress), diminished commitment, and lack of zealous advocacy, but provided little or nothing tangible to support these assertions. Velasquez also adds that Dragon's difficulty understanding Spanish handicapped him, but this argument would not amount to evidence that "was not available and could not have been discovered or presented at the former hearing" as is required by 8 C.F.R. § 1003.2(c).

Velasquez argues that he is not required to provide specific examples of prejudice because the denial of effective assistance was so clear in the circumstances and the harm -- removal -- was facially demonstrable. In doing so, he relies on

our statement in U.S. v. Loasiga, 104 F.3d 484, 488 (1st Cir. 1997) that, "[p]erhaps there may be deportations where a denial of counsel was so flagrant, and the difficulty of proving prejudice so great, as to argue for presuming harm." While we have yet to answer whether such a situation exists, we need not do so here because Velasquez in fact had counsel and there was no showing that counsel did not provide effective assistance. Dragon elicited from Velasquez testimony germane both to the issue of whether the one-year deadline for asylum claims applied and to the merits of Velasquez's application. He further provided documents in support of Velasquez's testimony, including the application materials that he had prepared, country reports for Colombia released by the United States Department of State in 1998, 1999, and 2000, releases from Amnesty International, an affidavit from Velasquez, letters from a former employer and from a friend of Velasquez, police reports, travel documents, and newspaper articles.

Accordingly, the circumstances pertaining to Dragon and his subsequent disbarment provide no reason for us to find that the Board abused its discretion in denying the motion to reopen.

## II.        Motion to Reconsider

We turn next to Velasquez's imputed motion to reconsider. "A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. §

1003.2(b)(1), formerly codified as 8 C.F.R. § 3.2(b)(1). Again, we review the Board's determination solely for an abuse of discretion. Zhang, 348 F.3d at 293; Nascimento v. INS, 274 F.3d 26, 28 (1st Cir. 2001). "In the reconsideration context, we will find an abuse of discretion if the denial was made without a 'rational explanation, inexplicably departed from established policies, or rested on an impermissible basis' (such as race)." Zhang, 348 F.3d at 293 (quoting Nascimento, 274 F.3d at 28).

In his brief to this Court, Velasquez argues that the IJ erred in three respects: (1) concluding that this case is not subject to the extraordinary circumstances exception of 8 U.S.C. § 1158(a)(2)(D) given the delay caused by Ansara; (2) concluding this case is not subject to the changed circumstances exception of 8 U.S.C. § 1158(a)(2)(D)[6] given especially State Department documents

_____

[6]Although not raised by the parties, there is some question as to whether this Court has jurisdiction to consider Velasquez's arguments concerning 8 U.S.C. § 1158. As mentioned, the IJ pretermitted Velasquez's asylum application pursuant to section 1158(a)(2)(B). Section 1158(a)(3) provides that "[n]o Court shall have jurisdiction to review any determination of the Attorney General under [inter alia, section 1158(a)(2)(B)]."

In Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003) we discussed the application of section 1158(a)(3) to our review of a Board decision on direct appeal from an IJ's determination under section 1158(a)(2)(B). There, we stated "that 8 U.S.C. § 1158(a)(3)could bar our review of the IJ's determination of the timeliness of Haoud's asylum application . . . ."

We need and do not decide whether under Haoud we lack jurisdiction over Velazquez's section 1158 arguments. Velasquez's arguments concerning the timeliness of his asylum claim are plainly without merit. We, therefore, see no need to delve into a jurisdictional issue neither raised nor briefed by either party. See, e.g., Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325

-13-

submitted by Velasquez; (3) and placing the burden on him, rather than the government, to prove that internal relocation in Colombia would not be reasonable when she considered his asylum claim.[7] While the Board did not individually address each of these arguments in denying Velasquez's motion, it implicitly resolved them, stating, "[we] . . . note that in our previous decision we affirmed the Immigration Judge's decision denying the respondents' applications because they failed to meet their burden to credibly prove eligibility for the relief they requested. We do not find any basis to disturb our previous decision." We turn to each of Velasquez's arguments.

First, the Board was well within its rights to uphold the IJ's conclusion that the extraordinary circumstances exception to the one-year deadline for asylum applications set forth in 8 U.S.C. § 1158(a)(2)(D) did not apply here. Section 1158(a)(2)(D) states in pertinent part, "[a]n application for asylum of an alien may be considered . . . if the alien demonstrates . . .

_____

F.3d 54, 59 (1st Cir. 2003) (courts may, in appropriate circumstances, reserve difficult questions of statutory jurisdiction when the case could alternatively be resolved on the merits in favor of the same party).

[7]Velasquez also argues that the IJ erred in failing to recognize an "acquiescence" argument under the Convention Against Torture. He did not raise this argument to the Board, however, so it is waived. Cf. Zhang, 348 F.3d at 293 (holding that Board did not abuse discretion by concluding that arguments developed for first time on reconsideration appeal were waived).

-14-

extraordinary circumstances relating to the delay in filing an application within the [one-year deadline]." Based on Velasquez's inconsistent testimony, the IJ concluded that the alleged extraordinary circumstances -- meeting an individual whom he mistakenly believed was an attorney and later discovering that the individual had disappeared -- began at the earliest in the summer of 1998, which was after the deadline had expired on April 1, 1998. The record evidence supports the IJ's finding. The IJ was, therefore, correct in concluding that these circumstances did not constitute extraordinary circumstances relating to the delay in filing an application within the one-year deadline. 8 U.S.C. § 1158(a)(2)(D).

Second, the Board justifiably rejected Velasquez's argument that the IJ failed to give due weight to the submitted State Department documents in determining that the changed circumstances exception to the one-year deadline in 8 U.S.C. § 1158(a)(2)(D) did not apply here. In his brief to us, Velasquez argues that these documents "support the premise that Colombia had changed politically between 1996 and 1998 into what the Department has calculated to be one of the most dangerous places on the planet", and, therefore, the IJ's alleged failure to give weight to these documents indicates that she improperly interpreted section 1158(a)(2)(D).

In addition to the "extraordinary circumstances" provision just mentioned, section 1158(a)(2)(D) also provides, "[a]n application for asylum may be considered . . . if the alien demonstrates . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . . ." During the hearing, Velasquez argued that his discovery that people were still looking for him in 1998 constituted changed circumstances under the statute. He did not refer to the State Department documents as constituting additional or independent grounds for concluding that changed circumstances existed. These were submitted at the beginning of the hearing without articulation of their relevance. In response to the argument that was articulated, the IJ stated:

> I find the assertion that someone was still looking for him in 1998 and that is why he did not file for asylum earlier not to constitute changed circumstances. It appears to be, assuming the truth of it although there's no foundation particularly for it, that this earlier pattern on which he bases his asylum claim had begun back in April of 1995. So [Velasquez] does not meet the burden on that ground.

We find the conclusion to be reasonable. Velasquez testified to having been assaulted by the Populares Milicias in 1995. He also testified to wanting to stay in the United States indefinitely in April of 1996 because of conditions in Colombia. We see no abuse of discretion in the IJ's conclusion that Velasquez was, in effect, fully aware of the basis of his asylum claim well before April 1,

1998, when the one-year period for seeking asylum expired. The IJ was entitled to conclude that circumstances already existing and known to Velasquez prior to the one-year deadline were not changed simply because of word that the Populares Milicias members were still around and possibly inquiring for him. 8 U.S.C. § 1158(a)(2)(D). As Velasquez's prior beatings and the extortion earlier practiced put him on notice of the risky conditions in Colombia that particularly concerned him, the State Department documents allegedly indicating an increase in lawlessness generally added little.

Lastly, as Velasquez's asylum claim was properly pretermitted, 8 U.S.C. § 1158(a)(2)(B), there is no need to examine further into its possible merits. Accordingly, we do not review Velasquez's third argument, which concerns the manner in which the IJ handled "in the alternative" the merits of his asylum claim. As Velasquez offers in his brief no cognizable arguments pertaining to either the withholding of removal or Convention Against Torture claims, we proceed no further.

**Affirmed.**