

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-2005

# Havrylenko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3144

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Havrylenko v. Atty Gen USA" (2005). *2005 Decisions*. Paper 555.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/555

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-3144

———

LARYSA HAVRYLENKO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,[*]
Respondent


[*] (Caption amended pursuant to Rule 43(c), Fed. R. App. P.)


———

Petition for Review of the Order
of the Board of Immigration Appeals
(A95-476-705)

———

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2005

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Filed September 13, 2005)

———

OPINION

SLOVITER, Circuit Judge.

Petitioner Larysa Havrylenko (hereinafter "Havrylenko" or "Petitioner") seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA") summarily affirming the decision of the immigration judge ("IJ") denying asylum, withholding of removal, and protection from removal under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). This court has jurisdiction to review the final agency order under 8 U.S.C. § 1252. For the reasons stated below, we will deny Havrylenko's petition for review.

## I.

Havrylenko, who is of Russian ancestry, was born "Larysa Rozova" in Kazakhstan in 1946. In 1966, Havrylenko married Murado Shavkatovich. They had two children but divorced in 1980.

Several years later, Havrylenko married Alexander Havrylenko ("Alexander")[1] with whom she had two children. Sometime in the late 1980s, the Havrylenkos moved from Kazakhstan to Ukraine, where Petitioner obtained work as a bookkeeper and accountant in a government factory.

---

[1] In her declaration in support of her application for asylum, Havrylenko averred that she married Alexander in 1987. During her testimony before the IJ, however, Havrylenko contended that she married Alexander in 1984. The discrepancy is irrelevant.

2

According to Havrylenko, at some point in 1990 a senior engineer at her workplace approached her to solicit her participation and assistance in a fraudulent scheme being planned by her co-workers to embezzle government equipment and supplies and sell such items outside of the normal channels of distribution, thereby reaping personal profit.

Havrylenko contends that she refused to join in or assist the conspiracy; she testified before the IJ that she reported the plot first to her superior at the plant, then to the overall chairman of the factory system in Kiev, and finally, having received no assistance from these lower-level officials, eventually went in 1992 to the state prosecutor's office. Havrylenko states that upon being so notified, these officials uniformly told her to mind her own business and, in some instances, threatened her with retaliation if she persisted in her attempts to expose the scheme. Moreover, Havrylenko contends that following her "whistle-blowing" endeavors her husband and son received beatings from unknown assailants and the windows on the family's home were cracked.

Despite these threats, Havrylenko was apparently able to maintain her job at the plant throughout this time. Moreover, in 1992, Havrylenko and Alexander had their second child; Havrylenko testified that the factory administrators allowed her to take a paid ten-month maternity leave from her work.

Havrylenko further testified that, in June 1993, she was arrested, taken into custody, and interrogated. She stated that the Ukranian authorities neither formally

3

charged her with any crime nor provided her with any procedural safeguards (such as an independent judicial review of her detention) despite the fact that the authorities imprisoned her in a cell for almost six months. It is Havrylenko's asserted belief that her "whistle-blowing" activities, combined with her Russian ethnicity, were the motivating factors behind her purportedly illegal imprisonment.

Havrylenko testified that, while she was in custody, one of her sons died in a suspicious fashion; indeed, the import of her testimony was that her son was murdered. According to Havrylenko, she initially obtained a document stating that the cause of her son's death was unknown; she further testified that, at some later point, she obtained a document indicating that her son had died of a drug overdose.[2] In any event, after being released from custody, Havrylenko stayed in the Ukraine until 1996 attempting to uncover what had happened to her son and to "get . . . justice." A.R. 118. She states that her efforts were met with apathy or outright hostility by the governmental officials from whom she sought assistance.

Havrylenko contends that the governmental threats eventually became too much for her to bear. Therefore, in 1996 Havrylenko and her youngest daughter moved to Russia, where she remained for approximately two-and-a-half years. Although Havrylenko is of Russian ancestry, she does not have Russian citizenship and thus was

---

[2] Havrylenko did not produce the latter document in the proceedings before the IJ.

4

unable to secure work in that country. This inability to find work, coupled with the declining health of her husband,[3] compelled Havrylenko to return to Ukraine in 1999. Although she was unable to find work upon her return to Ukraine, Havrylenko remained there until 2001, at which time she entered the United States via Mexico.

Within "a reasonable period of time" following her entry into this country, Havrylenko filed an application for asylum. App. at 59. On August 26, 2002, the former Immigration and Naturalization Service ("INS"),[4] served Havrylenko with a notice to appear charging her with removability. On November 19, 2002, Havrylenko appeared before an IJ sitting in Newark, New Jersey. At this hearing, Havrylenko conceded removability but sought asylum, withholding of removal, and relief under the CAT.[5]

By way of an Oral Decision dated March 17, 2003, the IJ denied Havrylenko's application for asylum, withholding of removal, and relief under the CAT and therefore ordered her to depart voluntarily. Notably, in so doing, the IJ made an adverse credibility

---

[3] Apparently, Alexander died of cancer sometime prior to Havrylenko's entry into the United States.

[4] As of "March 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the newly formed United States Department of Homeland Security." Leia v. Ashcroft, 393 F.3d 427, 430 n.4 (3d Cir. 2005). "The BIA, however, remains within the Department of Justice." Id. (citing, inter alia, Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002)).

[5] Havrylenko herself was the only witness who testified at this hearing.

determination.  See App. at 61 ("I am making my finding on my belief that she is not credible, that she has not told a consistent story.  She . . . [has] told a completely implausible story, and I don't believe it.").  On June 28, 2004, the BIA issued a "without opinion" affirmance of the IJ's decision.  App. at 71.

This timely petition for review followed.  Havrylenko argues before this court that the IJ erred in making his adverse credibility determination, denied her due process because he failed to analyze the totality of the circumstances in assessing her application, and erred in denying her application for lack of corroborating documentary evidence.  She argues that the BIA violated her due process rights in affirming the IJ's decision without opinion.

## II.

Whether an applicant qualifies for asylum, withholding of removal, or relief under the CAT is generally a factual determination, which this court will review under the substantial evidence standard.[6]  Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004); Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001).  Under this standard, the IJ's finding must be upheld unless "the evidence not only supports" a contrary conclusion, "but compels it."  Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478,

---

[6]  When, as in the case at bar, the BIA does not render its own opinion but rather defers to or adopts the opinion of an IJ, this court must review the decision of the IJ as the "final" agency decision.  Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004); Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir.2003) (en banc).

6

481 n.1 (1992); see also Chang v. Immigration & Naturalization Serv., 119 F.3d 1055, 1060 (3d Cir. 1997).

To qualify as a "refugee" who may receive asylum, an alien must establish that she is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Elias-Zacarias, 502 U.S. at 481 (internal quotations and citations omitted). The concept of "persecution" requires government involvement or the involvement of individuals the government is either "unable or unwilling" to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (internal citation and quotations omitted).

To establish "past persecution" and entitlement to asylum, an applicant must show: (1) an incident, or incidents, that constituted persecution; (2) that occurred on account of one of the statutorily-protected grounds; and (3) were committed by the government or forces the government is either unable or unwilling to control. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). An asylum "applicant can demonstrate that she has a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." Gao, 299 F.3d at 272. The threshold for establishing eligibility for withholding of removal is even higher than that for establishing entitlement to asylum and requires the petitioner to demonstrate a "clear probability" that, upon deportation to the country of

7

origin, "her life or freedom would be threatened on account of one of the statutorily enumerated factors." Senathirajah v. Immigration & Naturalization Serv., 157 F.3d 210, 215 (3d Cir. 1998). Given this higher standard, an applicant who does not qualify for asylum necessarily does not qualify for withholding of removal. Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004).

The BIA and this court have defined persecution "to include threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993); see also Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA 1985). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin, 12 F.3d at 1240.

Finally, to qualify for relief under the CAT, an applicant for relief bears the burden of proving through objective evidence that "'it is more likely than not'" that she would be "tortured" in the country to which the applicant would be removed. Wang v. Ashcroft, 368 F.3d 347, 348 (3d Cir. 2004) (quoting 8 C.F.R. § 1208.16(c)(2)).[7]

## III.

First, Havrylenko contends that the IJ erred in making an adverse credibility

---

[7] The definition of "torture" under the CAT is set forth at 8 C.F.R. § 208.18(a)(1) and need not be repeated here. See also Ogbudimkpa v. Ashcroft, 342 F.3d 207, 211-13 (3d Cir. 2003); Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir. 2003).

8

determination. Because they constitute factual determinations, "[a]dverse credibility determinations are reviewed under the substantial evidence standard . . . [and] must be upheld on review unless any reasonable adjudicator would be compelled to conclude to the contrary." Fiadjoe v. Attorney Gen. of the United States, 411 F.3d 135, 153 (3d Cir. 2005).

Here, the IJ found that Havrylenko's April 25, 2002 declaration in support of her asylum application varied materially from her testimony at the November 19, 2002 hearing. Apart from these internal inconsistencies, he found that Havrylenko's recounting of the facts was "completely implausible." App. at 61. For instance, he found implausible Havrylenko's contention that, while the government ostensibly was persecuting her for her "whistle-blowing," it continued to employ her at the factory and indeed allowed her to take a lengthy paid maternity leave. It cannot be said that the record before us compels a conclusion contrary to that of the IJ; thus, we decline to disturb the IJ's adverse credibility finding.

We further reject Havrylenko's argument that the factors giving rise to the IJ's adverse credibility determination were minor and did not go to the heart of her claim. Rather, the inconsistencies outlined by the IJ by-and-large pertained to the treatment Havrylenko received at the hands of the state and thus were quite material to her claims of

persecution and torture.[8]

We likewise reject Havrylenko's argument that the IJ failed to analyze the totality of the circumstances in assessing her application and in so doing denied her due process of law. Rather, the IJ's Oral Decision evinces a thorough and constitutionally sufficient analysis and application of the proffered facts and applicable law.

Havrylenko next argues that an absence of corroborating documentary evidence cannot be a ground for denying an asylum claim and that the IJ erred in admonishing her for failing to provide corroborating documentary evidence. Although this court has recognized "that it is escape and flight, not litigation and corroboration, that is foremost in the mind of an alien," Senathirajah v. Immigration & Naturalization Serv., 157 F.3d 210, 216 (3d Cir.1998), we have also noted that "applicants may be required, under certain circumstances, to provide corroborating evidence in order to meet their burden of proof." Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003). We have thus cautioned that "[a]n applicant for asylum must provide corroborating evidence only when it would be reasonably expected." Mulanga, 349 F.3d at 138.

---

[8] We further note that pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii) of the REAL ID Act of 2005, Pub. Law No. 109-13 (May 11, 2005), inconsistencies, inaccuracies, or falsehoods identified by an IJ giving rise to an adverse credibility determination may now be made "without regard" to whether they "go[ ] to the heart of the applicant's claim." That provision applies only to petitions filed after May 11, 2005 and hence is not applicable here. Id. at § 101(h)(2).

10

Here, the IJ chastised Havrylenko for failing to provide her work records or the document, which Havrylenko purportedly did possess at some point, that indicated that her son had died of a drug overdose.[9] We conclude that these documents are of the type that an asylum applicant would be "reasonably expected" to have, Mulanga, 349 F.3d at 138; therefore, we find no error in the IJ's decision regarding corroboration.

Finally, Havrylenko argues that the BIA violated her due process rights in summarily affirming the IJ's opinion. In making this argument, Havrylenko cites to a single opinion from another circuit, Haoud v. Ashcroft, 350 F.3d 201 (1st Cir. 2003). Of course, whatever Haoud may stand for (and we find the facts presented in Haoud to be distinguishable from those presented by the case at bar), it is not the law of this circuit. Rather, this court squarely has held that the BIA's practice (supported by duly promulgated regulations) of summarily affirming immigration judges' decisions "without opinion" does not violate due process. Dia v. Ashcroft, 353 F.3d 228, 242 (3d Cir. 2003) (en banc). We will thus reject Petitioner's argument that the BIA denied her due process.

**IV.**

For the above reasons, we will deny Havrylenko's petition for review.

---

[9] On a related note, the IJ further took Havrylenko to task for failing to explain one of the few pieces of documentary evidence that she did provide: the 1993 arrest record. See App. at 63 ("I have [before me] . . . an arrest record. I don't even know what it means.").