**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 06-2785

AQUÍLES DE JESÚS RINCÓN-BEDOYA,

Petitioner,

v.

PETER D. KEISLER, ACTING UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, <u>Circuit Judge</u>,
Selya, <u>Senior Circuit Judge</u>,
and Delgado-Colón,* <u>District Judge</u>.

<u>José A. Espinosa</u> on brief for petitioner.
<u>Douglas E. Ginsburg</u>, Senior Litigation Counsel, Office of Immigration Litigation, and <u>Ari Nazarov</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

November 5, 2007

*Of the District of Puerto Rico, sitting by designation.

**Per Curiam**.  The petitioner, Aquíles de Jesús Rincón-Bedoya, challenges a decision of the Board of Immigration Appeals (BIA) denying his applications for withholding of removal and for protection under the United Nations Convention Against Torture (CAT).  Discerning no error, we deny the petition for judicial review[1] and uphold the BIA's removal order.

The petitioner formerly taught physical education at the Colegio Padre Majaleta, a school in his native Colombia.  He left his homeland on May 4, 2003, and entered the United States at Miami, Florida, using forged travel documents.  He was apprehended immediately and, on May 8, the Immigration and Naturalization Service (INS) charged him with being an alien who by fraud or misrepresentation had sought to procure admission into the United States in violation of section 212(a)(6)(C)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(C)(i).  The INS also charged him, under section 212(a)(7)(A)(i)(I) of the INA, with failing to possess a valid entry document at the time of his admission.  Id. § 1182(a)(7)(A)(i)(I).

As events unfolded, the petitioner made conflicting statements concerning his reasons for fleeing Colombia.  For example, on May 4, 2003, he stated to an immigration officer that he had departed because his father-in-law had been kidnaped and his

---

[1]Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler has been substituted for former Attorney General Alberto R. Gonzales as the respondent herein.

wife had been threatened over the telephone. He voiced a belief that he would be harmed if he returned to Colombia. Three days later, however, he stated during a "credible fear" interview that both he and his wife had been threatened, and that the threats to his wife flowed from her relationship with him. He attributed those threats to disparaging remarks that he purportedly had made to his students about a local guerilla group.

During that interview, the petitioner mentioned that his father-in-law had been kidnaped for political or ideological reasons. In the same interview, he claimed, for the first time, that he had been assaulted while in Colombia. He said that two men on a motorcycle approached him, threw him to the ground, and threatened his life. He again expressed a fear that he would be killed if he returned to Colombia.

In due season, the authorities instituted removal proceedings. The petitioner conceded removability and cross-applied for withholding of removal and protection under the CAT. In an attached statement, he rehearsed the comments that he supposedly had made to his students, recounted the menacing telephone calls supposedly received by his wife, and again described the motorcyclists' purported assault on his person. He also revised his story about his father-in-law's kidnaping, claiming that it was motivated both by economic reasons (because his father-in-law might prove to be a munificent source of

"protection money") and by political animus (because his father-in-law shared the petitioner's political views).

On July 1, 2005, a hearing was held before an immigration judge (IJ). The petitioner testified that he had worked at a school and had spoken out against the guerillas while addressing his students. He also testified about his run-in with the men on the motorcycle, recounting that they threatened him and used obscenities. This time around, however, he admitted that they did not harm him physically. When cross-questioned, he expressed uncertainty about why he did not mention being threatened and assaulted during his original immigration interview. Finally, he conceded that his father-in-law's kidnaping and the threats made to his wife had more to do with his father-in-law's business than with anybody's politics.[2]

The petitioner's testimony was fuzzy as to how well he was able to communicate with the immigration officer during his initial interview. At first, he intimated that there was no Spanish-language interpreter present and that the immigration officer was not himself proficient in conversational Spanish.

--------

[2]In the course of his testimony, the petitioner stated that he had belonged to various groups while in Colombia, including one called the Sports Movement of Vienta. His testimony about that group's political status was vague and, therefore, we treat that membership as immaterial to his petition for judicial review.

Moments later, however, he stated that he "believe[d]" that he and the immigration officer "did get the communication straight."

Following the hearing, the IJ ordered the petitioner's removal and, concomitantly, denied his entreaties for withholding of removal and protection under the CAT. Citing his inconsistent statements and the utter absence of any independent corroboration, the IJ found the petitioner not credible. Given that finding, the petitioner was unable to carry his burden of proof on either of his requests for relief.

The petitioner pursued an administrative appeal. On November 29, 2006, the BIA affirmed the IJ's decision. It noted that the petitioner had neither provided any convincing explanation for his inconsistent statements nor furnished any corroborative evidence.

The petitioner then filed this timely petition for judicial review. We have jurisdiction under 8 U.S.C. § 1252(b)(2).

We start with the standard of review. In the case at hand, the BIA endorsed, and relied upon, the findings of the IJ, while adding its own supporting views. In that sort of situation, we review in tandem the decisions of both the IJ and the BIA. Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006); Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

That review proceeds in line with the familiar substantial evidence standard. Under that rubric, the BIA's

decision must be upheld as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). This is a deferential standard; it allows a reviewing court to reverse the BIA's determination of a relevant fact "only when the record evidence would compel a reasonable factfinder to make a contrary determination." Aguilar-Solís v. INS, 168 F.3d 565, 569 (1st Cir. 1999).

This case involves a subset of the substantial evidence rule dealing with the credibility of witnesses. When the agency has made an adverse credibility determination based on specific findings, a reviewing court must treat that determination with considerable respect. See Olujoke v. Gonzales, 411 F.3d 16, 21-22 (1st Cir. 2005); Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004). Even so, the court's role is not reduced to that of a rubber stamp. To be supportable, an adverse credibility determination must be accompanied by particularized and persuasive findings, expressly articulated or easily inferable from context, sufficient to give it weight. Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005) (explaining that "an IJ must offer a specific and cogent rationale for disbelieving the alien"); El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003) (noting that appellate deference on credibility questions in immigration cases "is expressly conditioned on support in the record, as evidenced by

specific findings"). Moreover, an adverse credibility determination cannot rest on trivia but, rather, must rest on discrepancies that involve matters of consequence. Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007); Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999).

An alien's credible testimony, standing alone, may be sufficient to sustain his burden of proof even without corroboration. See Pan, 489 F.3d at 86; see also 8 C.F.R. § 208.16(b). But when an IJ supportably determines that an alien's testimony lacks veracity, that adverse credibility determination divests the testimony of probative force and the testimony may, therefore, be disregarded or discounted. See Pan, 489 F.3d at 86; Nikijuluw, 427 F.3d at 121. Thus, an adverse credibility determination may prove fatal to an alien's claim for withholding of removal or other relief. Pan, 489 F.3d at 86; Stroni v. Gonzales, 454 F.3d 82, 89 (1st Cir. 2006).

Against this backdrop, we turn to the legal framework surrounding this case. We start with withholding of removal.

In order to establish eligibility for withholding of removal, an alien has the burden of proving that it is more likely than not that his life or freedom will be threatened were he repatriated. See 8 C.F.R. § 208.16(b); see also Pan, 489 F.3d at 85-86. If the alien provides credible evidence that he has suffered past persecution on one of five enumerated grounds, it may

be presumed the he will be persecuted in the future should he return to his homeland. See 8 C.F.R. § 208.16(b)(1)(i). The five enumerated grounds are race, religion, nationality, membership in a particular social group, and political opinion. See 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.16(b)(2); see also Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).

To constitute persecution, "a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000); see Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (finding that two incidents, occurring more than twenty-five months apart, were insufficient "to suggest that the petitioner was systematically targeted for abuse on account of his political beliefs"). In short, a finding of persecution requires more than the happening of one or two disagreeable events.

In the case at bar, the petitioner's primary argument is that the IJ's evaluation of his credibility was incorrect. He maintains that his testimony should have been credited and that it sufficed to prove all the elements necessary to entitle him to relief. In his view, his experience with the local guerilla group qualifies as past persecution and, thus, creates the basis for a well-founded fear of future persecution.

We disagree. The petitioner's argument assumes the veracity of his testimony — testimony that both the IJ and the BIA

found unworthy of credence. That adverse credibility determination is fully supportable: the petitioner's statements about material matters were markedly inconsistent at crucial points. Furthermore, these inconsistencies were not adequately explained. The adverse credibility determination was, therefore, unimpugnable. See, e.g., Mewengkang v. Gonzales, 486 F.3d 737, 740 (1st Cir. 2007); Dhima v. Gonzales, 416 F.3d 92, 96 (1st Cir. 2005).

To be sure, the petitioner argues with considerable fervor that the IJ and the BIA incorrectly appraised his credibility. But this is sound and fury, signifying very little. If an alien is to prevail under the substantial evidence standard, "the administrative record, viewed in its entirety, must compel the conclusion that he is [eligible for the requested relief]." Aguilar-Solís, 168 F.3d at 569. In this instance, it is transparently clear that, on whole-record review, the petitioner cannot pass this daunting test.

The remainder of the case is child's play. Stripping the petitioner's (incredible) testimony out of the equation, there is simply no way that a reasonable adjudicator could find either past persecution or a well-founded fear of future persecution. Thus, the claim for withholding of removal founders.

The petitioner's CAT claim need not detain us. In order to establish eligibility for protection under the CAT, an alien must prove a likelihood that he will be tortured if returned to his

country of origin.  See Stroni, 454 F.3d at 89-90.  He may demonstrate this likelihood by providing evidence of past torture. 8 C.F.R. § 208.16(c)(3)(i).

If there is any evidence of torture here — a question we do not reach — that evidence is washed away by the adverse credibility determination.  Since that determination must be respected, see text supra, the CAT claim topples.

In this venue, the petitioner also advances a due process claim.  This claim is poorly developed but, as best we can tell, he argues that he was unable to communicate clearly with his interlocutors during at least one of his interviews and that this inability caused the IJ to determine that his statements were inconsistent.  Building on this foundation, he maintains that the BIA violated his due process rights by failing to take into account, or to address, the IJ's reliance on these alleged miscommunications.

This is wishful thinking.  There is no mechanical checklist for BIA decisions.  For aught that appears here, the BIA reviewed the whole of the record, applied the appropriate standard of review, and satisfactorily explained its decision.  No more was exigible.

The petitioner's attempt to rely on Haoud v. Ashcroft, 350 F.3d 201 (1st Cir. 2003), is unavailing.  There, the BIA affirmed without opinion an IJ's decision to deny asylum.  Id. at

204. In doing so, the BIA disregarded a relevant precedent that had been decided between the time of the IJ's ruling and the time of its ruling, notwithstanding that the petitioner had brought the precedent to the BIA's attention. Id. This court remanded, holding that the BIA may not use the affirmance without opinion procedure, 8 C.F.R. § 1003.1(e)(4), without giving due consideration to its own precedents. Haoud, 350 F.3d at 207-08.

The petitioner's case is unlike Haoud in obvious ways. Here, the BIA did not use the affirmance without opinion procedure at all but, rather, wrote a reasoned opinion of its own. Moreover, it did not overlook a controlling precedent. Consequently, Haoud is inapposite and we therefore dismiss the petitioner's due process claim as unfounded.

We need go no further. For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.